IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

CONSTANCE R. PREWITT-MOSBY,   )
 )
    Plaintiff,   )
 )
v.   )   No. 14-cv-2618-SHL-tmp
 )
MEGAN BRENNAN, Postmaster   )
General, United States Postal   )
Service,   )
 )
    Defendant.   )
 )

_____

REPORT AND RECOMMENDATION

_____

Before the court is the Motion for Summary Judgment filed by Megan Brennan, the Postmaster General for the United States Postal Service ("USPS"), on November 25, 2015. (ECF No. 32.) *Pro se* plaintiff Constance R. Prewitt-Mosby filed a response in opposition on December 23, 2015. (ECF No. 33.) The USPS filed a reply on January 7, 2016. (ECF No. 34.) For the reasons below, it is recommended that the USPS's motion be granted in part and denied in part.

## I.  PROPOSED FINDINGS OF FACT[1]

Mosby worked for the USPS as a Rural Carrier Associate at the Collierville, Tennessee Post Office for less than three

_____

[1] Set forth below are only those facts that the court finds to be material to the USPS's motion for summary judgment.

months, from May to July 2011.  In her complaint and the exhibits attached thereto, Mosby alleges that she was sexually harassed by her supervisor, James Brown, from May 18, 2011, through June 23, 2011.[2]  More specifically, in a document that formed part of her formal EEOC complaint, Mosby alleges that the following events occurred during that time period:

> May 18, 2011 - James Brown states; "Your name is sub until I tell you otherwise."  I asked James Brown to please address me by my name, Constance.  He continued to address me as sub.

> May 26, 2011 - James Brown states; "Sub you're going to need a flashlight to get back to the post office this evening."

> Jun 3, 2011 - James Brown states; "Connie hurry back so I can get that wet T-shirt show."

> Jun 5, 6, 2011 - James Brown states; "It's time for a show; Connie is here with another wet T-shirt."

---

[2]In Mosby's response in opposition to the USPS's motion, she states that she was sexually harassed by James Brown from May 18, 2011, until July 5, 2011.  (ECF No. 33-1.)  She also attaches to her response a copy of what appears to be a complaint filed with the USPS regarding the alleged harassment, which is dated July 6, 2011.  (ECF No. 33-2.)  In this document, Mosby states: "[f]rom May 18, 2011, until July 5, 2011, James Brown continued to come in my work area, regardless of which rural route I worked, stalking me."  However, Mosby does not identify in her response or the attached exhibits any specific instances of acts of sexual harassment that occurred after June 23, 2011.  Moreover, in her Equal Employment Opportunity Commission ("EEOC") investigative affidavit, attached as an exhibit to the government's motion, Mosby states that she "was sexually harassed repeatedly between May 18, 2011 and June 23, 2011 by James Brown."  (ECF No. 32-1.)  In light of this inconsistency, the court will rely on the dates alleged in Mosby's complaint and affidavit, rather than the dates alleged in her unsworn response to the USPS's motion.

Jun 8, 9, 10, 2011 - James Brown states; "Time for the wet T-shirt show, Connie has made it back from her route."

Jun 15, 2011 - James Brown came into the casing are[a] where I was working, breathing down the back of my neck, placing his hands on my waist.

Jun 21, 2011 - James Brown states since it was raining, he would enjoy an early wet t-shirt show. James Brown states he should really be able to see my breast now.

Jun 22, 2011 - James Brown states to another employee in front of me while looking at me, stating some people just don't know when they have it good, laughing stating if I'd kept quiet my job would've been easier.

Jun 23, 2011- James Brown stated; "Here is Connie, the wet T-shirt show is on again. Turn around Connie and let me see if I can see your breasts."[3]

(ECF No. 1-1, Exhibit B.)  According to the USPS, Mosby failed to deliver an Express Mail item in a timely manner on July 2, 2011.[4]  All Express Mail "must be delivered by 15.00," but Mosby delivered an Express Mail item at "15.01 on July 2, 2011." (ECF No. 33-2, Exhibit A.)  Additionally, on July 5, 2011, Mosby did

---

[3]In its motion, the USPS alleges that at the time of the events alleged by Mosby, Mosby "and other employees would wear the equivalent of a wet towel around their necks, which would cause their shirts to get wet." (ECF No. 32-7.)

[4]Mosby disputes this allegation and argues that she was not "the only carrier who had an Express Mail failure." (ECF No. 33.) The court finds that this factual dispute is immaterial to the resolution of this motion.

not return to the Collierville Post Office on time after completing her assigned route.[5]

Mosby alleges that on July 6, 2011, she attempted to submit a complaint of sexual harassment to her immediate supervisor, Andrea Brown, but Andrea Brown refused to take the complaint. (ECF No. 33-2, Exhibit E.)  Also on July 6, Andrea Brown held an "Investigative Interview" with Mosby "to determine whether or not corrective action will be issued for failure to follow instructions and failure to assign duties as assigned." (ECF No. 33-2, Exhibit A.)

On July 7, 2011, Andrea Brown submitted a "Request for Disciplinary Action to the Agency's Labor Relations Office" regarding Mosby.  On the same day, Andrea Brown conducted a sixty-day evaluation of Mosby, even though Mosby's thirty-day evaluation had taken place only three weeks prior, on June 14, 2011.  (ECF No. 33-2, Exhibit Y.)  Mosby was evaluated at her thirty and sixty-day evaluations based on the following categories:

---

[5]Mosby does not dispute this fact, but alleges that she was not "the only carrier who failed to return to the Collierville Post office in a timely manner on July 5, 2011.  Gerald Johnson['s] return time was 6:05 pm on July 5, 2011."  Mosby attaches to her response what appears to be a timesheet for an individual named "G. Johnson" in support of her allegation.  (ECF No. 33-2, Exhibit B.)  The court finds that this factual dispute is immaterial to the resolution of this motion.

**A. Work Quantity**
- Works at a sufficient speed to keep up with the amount of work required by the position.
- Accomplishes tasks in an efficient and timely manner.
- Makes productive use of time when completing assignments.

**B. Work Quality**
- Makes few errors or mistakes.
- Performs work which meets the expectations of the position.
- Works in a careful, alert, and conscientious manner to ensure the accuracy and completeness of the work performed.

**C. Dependability**
- Completes work assignments without unnecessary supervision.
- Takes responsibility for completing his/her own work.
- Reports to work on time.
- Demonstrates satisfactory attendance.

**D. Work Relations**
- Maintains positive working relationships with others.
- Works harmoniously with others in getting the work done.
- Cooperates well with co-workers, supervisors, and others with whom he/she comes into contact.

**E. Work Methods**
- Handles equipment and/or work materials in an appropriate manner.
- Consistently observes proper safety rules and practices.
- Understands and follows oral and/or written instructions.

**F. Personal Conduct**
- Conducts himself/herself in a manner appropriate to the work setting.
- Maintains an appropriate appearance for the position.

- Demonstrates a positive approach toward work, co-workers, and supervisors.
- Demonstrates a willingness to handle all assignments.
- Demonstrates flexibility in moving from one task to another as needed.

(ECF No. 33-2, Exhibit Y.)  In her June 14, 2011 evaluation, Mosby was rated "satisfactory" in the categories of work quantity and work quality, and was rated "outstanding" in the categories of dependability, work relations, work methods, and personal conduct.  However, when Mosby was evaluated on July 7, 2011, Mosby was rated "unacceptable" in every category except dependability, in which she was rated "satisfactory."  (ECF No. 33-2, Exhibit Y.)

Also on July 7, Mosby alleges that she attempted to submit a complaint regarding safety concerns to Andrea Brown, but that Andrea Brown refused to take her complaint form.[6]  (ECF No. 33-2, Exhibit K.)  Mosby also states that she submitted a complaint of sexual harassment to Robert Austin, the Collierville Postmaster, on July 7.  Mosby alleges that Austin told her "not to worry about James Brown . . . I like James Brown, he is a good guy. James Brown is harmless."  (ECF No. 1-1; ECF No. 33-2, Exhibit E.)

---

[6]Mosby argues that Andrea Brown requested Mosby's completed complaint form regarding her safety concerns on July 11, 2011. (ECF No. 1-1.)  The court finds that this factual dispute is immaterial to the resolution of this motion.

On July 11, 2011, Mosby was given a Letter of Separation by Andrea Brown, which terminated her employment effective July 19, 2011. When Mosby refused to sign the form, Andrea Brown called James Brown into the office to witness her refusal to sign. (ECF No. 33-2, Exhibit N.) Although her termination was not effective until July 19, Mosby alleges that she was instructed not to report to work as scheduled on July 12-16, 2011. (ECF No. 1-1, Exhibit B.)

On or about August 23, 2011, Mosby filed a charge with the EEOC, alleging that she was discriminated against because of her sex and that she was retaliated against by the USPS. Mosby received a right to sue letter from the EEOC on or about May 15, 2014. (ECF No. 1-1, Exhibit A.) Subsequently, Mosby filed a *pro se* complaint in this court on August 8, 2014, alleging discrimination and retaliation by the USPS in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). The USPS filed the instant motion for summary judgment on November 25, 2015. In its motion, the USPS argues that Mosby's discrimination claim should be dismissed as a matter of law because the alleged sexual harassment Mosby experienced was not sufficiently severe or pervasive, and because Mosby cannot establish employer liability. Additionally, the USPS argues that Mosby's retaliation claim should be dismissed as a matter of law because as part of her retaliation claim, she asserts

that she was terminated for filing an Occupational Safety and Health Administration ("OSHA") complaint, which the USPS argues does not constitute a protected activity under Title VII. Finally, the USPS argues that Mosby was terminated for legitimate, non-retaliatory reasons.

## II.   PROPOSED CONCLUSIONS OF LAW

### A.   Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Geiger v. Tower Auto., 579 F.3d 614, 620 (6th Cir. 2009). In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). "The moving party bears the initial burden of production." Palmer v. Cacioppo, 429 F. App'x 491, 495 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Once the moving party has met its burden, "the burden shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" Jakubowski v. Christ Hosp., Inc., 627 F.3d 195, 200 (6th Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "[I]f the

nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law." Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001). "The central issue 'is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Palmer, 429 F. App'x at 495 (quoting Anderson, 477 U.S. at 251–52).

**B. Sexual Harassment Claim**

In her complaint, Mosby alleges sex discrimination in the form of sexual harassment in violation of Title VII. Title VII makes it unlawful for an employer to discriminate against individuals based on their race, color, sex, religion, or national origin. 42 U.S.C. § 2000e-2(a)(1). There are two types of sexual harassment prohibited by this statute: (1) *quid pro quo* harassment and (2) sexual discrimination which creates a "hostile or abusive work environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65–66 (1986); see also Souther v. Posen Constr., Inc., 523 F. App'x 352, 354-55 (6th Cir. 2013); Howington v. Quality Rest. Concepts, LLC, 298 F. App'x 436, 440 (6th Cir. 2008). *Quid pro quo* harassment "occurs when an employee's submission to unwanted sexual advances becomes either a condition for the receipt of job benefits, or the means to

avoid an adverse employment action." Howington, 298 F. App'x at 440 (citing Bowman v. Shawnee State Univ., 220 F.3d 456, 461 (6th Cir.2000)). To succeed on a *quid pro quo* harassment claim, the plaintiff must prove "that he or she 'was subjected to unwelcome[] sexual harassment in the form of sexual advances or requests for sexual favors' and that submitting to these demands or advances was an express or implied condition for receiving job benefits, or that refusing to submit resulted in a tangible job detriment." Souther, 523 F. App'x at 355 (quoting Highlander v. K.F.C. Nat'l Mgmt. Co., 805 F.2d 644, 648 (6th Cir. 1986)). "Whether sexual harassment culminates in an adverse employment action determines whether a claim falls within the *quid pro quo* framework, or should be evaluated as a hostile environment claim." Howington, 298 F. App'x at 440 n.4. Mosby has not alleged *quid pro quo* sexual harassment.

"Title VII also 'affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult,' and, to enforce this right, prohibits conduct that creates a 'hostile work environment.'" Id. at 440 (quoting Meritor, 477 U.S. at 65.) To establish a *prima facie* case of a sexually hostile work environment claim under Title VII, a plaintiff must show that: "(1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment created

a hostile work environment; and that (5) the employer is vicariously liable." Clark v. United Parcel Serv., Inc., 400 F.3d 341, 347 (6th Cir. 2005) (citing Williams v. Gen. Motors Corp., 187 F.3d 553, 560-61 (6th Cir. 1999)); see also Shields v. Fed. Express Customer Info. Servs. Inc., 499 F. App'x 473, 477-78 (6th Cir. 2012); Simpson v. Vanderbilt Univ., 359 F. App'x 562, 571-72 (6th Cir. 2009); Howington, 298 F. App'x at 443.

### 1. Severe or Pervasive Harassment

The USPS argues that even if Mosby can meet her burden as to the first three elements of her sexual harassment claim, she nevertheless cannot meet her burden as to the fourth element because the alleged harassment was not sufficiently severe or pervasive enough to create a hostile work environment as a matter of law. In order to establish that a hostile work environment exists, a plaintiff must demonstrate that "the workplace was 'permeated with discriminatory intimidation, ridicule or insult sufficiently severe or pervasive to alter the conditions of employment.'" Blackmon v. Eaton Corp., 587 F. App'x 925, 930 (6th Cir. 2014) (quoting Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 333 (6th Cir. 2008)). The determination of whether harassment is sufficiently severe or pervasive to establish a hostile work environment "is not susceptible to a mathematically precise test." Waldo v.

- 11 -

*Consumers Energy Co.*, 726 F.3d 802, 814 (6th Cir. 2013) (citing *Hawkins*, 517 F.3d at 333) (internal quotation marks omitted). Rather, courts consider the totality of the circumstances, including factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009). Ultimately, "the issue is not whether each incident of harassment *standing alone* is sufficient to sustain the cause of action in a hostile environment case, but whether — taken together — the reported incidents make out such a case." *Williams*, 187 F.3d at 562. "Summary judgment is appropriate only if the evidence is so one-sided that there is no genuine issue of material fact as to whether there was a hostile work environment." *Hawkins*, 517 F.3d at 333 (citing *Abeita v. Transam. Mailings, Inc.*, 159 F.3d 246, 250 (6th Cir. 1998)). Title VII, however, is not meant to be a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). As such, "the harassment must consist of more than words that simply have sexual content or connotations" to create a hostile work environment. *Hawkins*, 517 F.3d at 333 (citing *Knox v. Neaton Auto Prods. Mfg.*, 375 F.3d 451, 459-60 (6th Cir.

2004)). "'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to' a hostile work environment. Rather, 'conduct must be extreme to amount to a change in the terms and conditions of employment.'" Rayford v. Ill. Cent. R.R., 489 F. App'x 1, 5 (6th Cir. 2012) (quoting Faragher, 524 U.S. at 788) (internal citations omitted).

Viewing all of the evidence in a light most favorable to Mosby (as the nonmoving party), the court concludes that a reasonable juror could find that James Brown's actions, taken together, were sufficiently severe or pervasive to create a hostile work environment. In her typed outline submitted to the EEOC, Mosby describes eight incidents of verbal harassment and one act of inappropriate touching over a relatively short period of twenty days.[7] Additionally, with regard to severity, the Sixth Circuit has "made clear that harassment involving an 'element of physical invasion' is more severe than harassing

_____

[7]The court notes that two additional incidents of harassment alleged by Mosby, James Brown calling her "sub" and telling her she will need a flashlight to get back to the office, appear to be unrelated to Mosby's sex. Because Mosby has not shown that these comments were based upon her sex, these alleged harassing acts cannot be considered in the hostile work environment analysis. See Bowman, 220 F.3d at 464 ("We agree with the district court that while Bowman recites a litany of perceived slights and abuses, many of the alleged harassing acts cannot be considered in the hostile environment analysis because Bowman has not shown that the alleged harassment was based upon his status as a male.").

comments alone." <u>Hawkins</u>, 517 F.3d at 334. Mosby alleges that James Brown inappropriately touched her on one occasion. In <u>Williams v. General Motors Corp.</u>, 187 F.3d 553, 563 (6th Cir. 1999), the Sixth Circuit found that several sexual comments and one act of physical touching "at minimum, . . . raise[d] a question of fact for the jury" and could not be properly dismissed on summary judgment.

With regard to interference with work performance, Mosby has presented evidence that she was physically threatened by James Brown's alleged behavior and that it altered her work environment. In the complaint submitted to Andrea Brown dated July 6, 2011, Mosby stated that she informed James Brown on numerous occasions that his sexual comments made her feel "very uncomfortable" and asked him to stop. She further stated in the complaint that James Brown's alleged harassment was "very intimidating," caused her "to be very afraid to be around James Brown," and made her "work environment very stressful, uncomfortable, and fearful." Moreover, in her EEOC investigative affidavit, Mosby stated that James Brown's "unwanted sexual advances began to escalate daily" after she informed him that his conduct was unwelcome. (ECF No. 33-2.) Although Mosby has not presented any evidence that the harassment interfered with her work performance, considering the totality of the circumstances, the court finds that Mosby has

presented an issue for the trier of fact as to whether James Brown's actions created a hostile work environment. <u>See Williams</u>, 187 F.3d at 568 (reversing grant of summary judgment in favor of employer and reasoning that the district court made improper conclusions based on plaintiff's failure to present evidence that she was "physically threatened" by the alleged harassment or that her work was "affected" by the harassment); <u>see also</u> <u>Gallagher v. C.H. Robinson Worldwide, Inc.</u>, 567 F.3d 263, 273 (6th Cir. 2009) (reversing district court's grant of summary judgment in employer's favor and stating that "the district court also erred in requiring evidence that Gallagher's work performance suffered measurably as a result of the harassment"); <u>Howington v. Quality Rest. Concepts, LLC</u>, 298 F. App'x 436, 445 (6th Cir. 2008) (reversing summary judgment in favor of employer and stating that "[a]lthough Plaintiff is unable to describe more than a few specific incidents of harassment, when a plaintiff claims ongoing harassment, the 'inability to recount any more specific instances goes to the weight of her testimony, a matter for the finder of fact'") (quoting <u>Abeita</u>, 159 F.3d at 252).

2. <u>Employer Liability</u>

Next, the USPS argues that even if Mosby can establish a hostile work environment, she is unable to establish a basis for employer liability. An employer is vicariously liable for

sexual harassment of an employee by his or her supervisor, even when the supervisor takes no tangible employment action against the employee, unless the employer "establishes its affirmative defense by a preponderance of the evidence." Thornton v. Fed. Express Corp., 530 F.3d 451, 456 (6th Cir. 2008); E.E.O.C. v. Harbert-Yeargin, Inc., 266 F.3d 498, 510 (6th Cir. 2001). An employer establishes its affirmative defense "by demonstrating (a) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (b) that plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Thornton, 530 F.3d at 456 (citing Faragher, 524 U.S. at 807; Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998); Jackson v. Quanex Corp., 191 F.3d 647, 658 (6th Cir. 1999)); Harbert-Yeargin, 266 F.3d at 510 (quoting Burlington, 524 U.S. at 765 & Faragher, 524 U.S. at 807). "Generally, an employer satisfies the first part of this two-part standard when it has promulgated and enforced a sexual harassment policy." Thornton, 530 F.3d at 456. The Sixth Circuit has held that "an effective policy should at least: (1) require supervisors to report incidents of sexual harassment . . . (2) permit both informal and formal complaints of harassment to be made . . . (3) provide a mechanism for bypassing a harassing supervisor when making a complaint . . . and (4) and

provide for training regarding the policy." Clark, 400 F.3d at 349-50 (internal citations omitted).

The USPS does not dispute that James Brown was Mosby's supervisor and that Mosby filed a complaint of sexual harassment on July 6, 2011. Aside from arguing the lack of employer liability, the USPS has not presented any evidence regarding the existence of a sexual harassment policy, nor has it presented any evidence that Mosby unreasonably failed to take advantage of any preventive or corrective opportunities offered by the USPS. Therefore, the court finds that the USPS is not entitled to summary judgment on the issue of employer liability.

## C.  **Retaliation Claim**

Title VII "forbids an employer from retaliating against an employee who 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" Jones v. City of Franklin, 468 F. App'x 557, 563 (6th Cir. 2012) (quoting 42 U.S.C. § 2000e-3(a)). To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he or she engaged in activity protected by Title VII; (2) this protected activity was known to the employer; (3) the employer thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. Fuhr v. Hazel Park Sch. Dist., 719 F.3d 668, 674 (6th Cir. 2013); see

also Morris v. Oldham Cnty. Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000). The burden of establishing a *prima facie* case of retaliation is not onerous. Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 523 (6th Cir. 2008); Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). Additionally, the Sixth Circuit has stated that "caution should be exercised in granting summary judgment once a plaintiff has established a prima facie inference of retaliation." Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 564 (6th Cir. 2004). Once a plaintiff establishes a *prima facie* case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory explanation for the adverse employment action. Id. at 563. Should the defendant meet its burden of production, "the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is merely a pretext for retaliation." Kettering v. Diamond-Triumph Auto Glass, Inc., 24 F. App'x 352, 357 (6th Cir. 2001). "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000).

    1.  Protected Activity

Mosby alleges that she was terminated in retaliation both for making an OSHA complaint and a sexual harassment complaint. The USPS does not dispute that making a sexual harassment complaint is protected activity for purposes of Title VII, but argues that filing an OSHA complaint is not. Protected activity "refers to opposing any practice made unlawful under Title VII . . . or making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII." Scott v. Potter, 182 F. App'x 521, 524 (6th Cir. 2006). The Sixth Circuit has not squarely addressed whether filing an OSHA complaint constitutes protected activity under Title VII. See Mohr v. Hoover Co., 97 F. App'x 620, 625 (6th Cir. 2004) (assuming without deciding that the filing of an OSHA complaint is protected activity under Title VII). However, numerous other federal courts have held that filing an OSHA complaint or participating in an OSHA investigation does not qualify as activity protected by Title VII. See Washington v. M. Hanna Const. Inc., 299 F. App'x 399, 401 (5th Cir. 2008) ("Because Title VII does not encompass violations of OSHA . . . Plaintiff's alleged reporting of M. Hanna to authorities for violating OSHA does not qualify as protected activity under Title VII."); Gurish v. Ohio Dep't of Mental Retardation & Developmental Disabilities, No. 1:10CV02292, 2012 WL 3649359, at *2 (N.D. Ohio Aug. 23, 2012) ("Plaintiff's actions for which he

alleges retaliation within his EEOC charge are not considered protected activity under Title VII as defined above, but instead relate to claims of OSHA violations . . . Thus he fails to make a *prima facie* claim of retaliation pursuant to Title VII."); Davis v. Coastal Bridge Co., No. CIV.A. 12-309-FJP, 2012 WL 3524766, at *2 (M.D. La. July 19, 2012) ("Also, Title VII does not encompass OSHA violations; thus, even if her letter to OSHA was construed as a protected activity, it does not qualify as one for purposes of Title VII."); Dixon v. Primary Health Servs. Ctr., No. CIV.A. 10-1490, 2012 WL 1566279, at *4 (W.D. La. May 1, 2012) ("The Court finds that Dixon fails to establish a *prima facie* case of retaliation because participation in an OSHA proceeding is not a protected activity under Title VII."); Sanders v. Mount Waste Recycle Inc., No. 2:11CV1032-WKW, 2012 WL 503576, at *1 (M.D. Ala. Jan. 26, 2012) ("Because Title VII does not encompass violations of OSHA . . . Sanders's allegations about retaliation for complaining about OSHA violations does not qualify as protected activity under Title VII."); Brown v. Superior Contract Cleaners, No. 10-CV-6238 CJS, 2011 WL 4055166, at *5 (W.D.N.Y. Sept. 12, 2011) ("In this case, Plaintiff has not stated a plausible claim for retaliation, since he has not alleged that he engaged in protected activity that is covered by Title VII. Specifically, threatening to make an OSHA complaint against one's employer is not protected activity under Title

VII."); <u>Cook v. Liquid Container, Inc.</u>, No. 1:08-CV-167, 2009 WL 3682285, at *6 (S.D. Ohio Nov. 2, 2009) ("Plaintiff's retaliation claims fail for the additional reason that she claims that she was retaliated against for complaining about possible OSHA violations created by the regrind backlog and not for any reason relating to employment discrimination."); <u>Rodriguez v. Beechmont Bus Serv., Inc.</u>, 173 F. Supp. 2d 139, 150 (S.D.N.Y. 2001) ("Defendants correctly argue that the OSHA investigation was not brought pursuant to Title VII and that unsafe working conditions are not made unlawful under Title VII. As a result, plaintiff's Title VII retaliation claim that is premised upon retaliation in response to cooperation with an OSHA investigation is dismissed."). Likewise, this court finds that filing an OSHA complaint does not constitute protected activity under Title VII. Therefore, the court recommends that the USPS's motion be granted as to Mosby's Title VII retaliation claim relating to her OSHA complaint.

2. <u>Reason for Termination</u>

With respect to Mosby's *prima facie* case, the USPS does not allege in its summary judgment motion that she fails to satisfy any of the four prongs. Rather, the USPS describes the burden-shifting framework and then immediately proceeds to argue its non-retaliatory reasons for Mosby's termination, without any discussion of her *prima facie* case. More specifically, the USPS

alleges that Mosby was terminated due to her failure to deliver an Express Mail package in a timely manner on July 2, 2011, and for her failure to return to the office on time on July 5, 2011. In her response in opposition, Mosby argues that the USPS's reasons for terminating her employment were pretextual.

Based on an examination of the record, the court submits that Mosby has presented sufficient evidence from which a reasonable juror could conclude that she has established a *prima facie* case of retaliation. First, she has presented evidence that she engaged in protected activity, by reporting the alleged sexual harassment to her superiors. Second, she has shown that Andrea Brown (her direct supervisor) and Robert Austin (the Collierville Postmaster) knew that she engaged in this protected activity. Third, Mosby has demonstrated that she suffered an adverse employment action, based on her termination. Fourth, Mosby has sufficiently shown that there is a causal connection between her reporting and the adverse employment action. Mosby reported the sexual harassment to Andrea Brown on July 6, 2011, and reported it to Robert Austin on July 7, 2011. Mosby received a letter of separation on July 11, 2011. Viewed in a light most favorable to Mosby, the temporal proximity between Mosby's reporting and her termination may be viewed by the trier of fact as evidence of a causal connection. See Mickey, 516 F.3d at 525-26. Moreover, Mosby has presented other evidence of

a causal connection, including evidence that on July 7, 2011, the day after she reported the alleged harassment to Andrea Brown, Andrea Brown gave her an unfavorable and arguably premature 60-day employee evaluation, even though she had received a favorable 30-day employee evaluation from Andrea Brown on June 14, 2011. More specifically, on June 14, 2011, Mosby was rated "satisfactory" in the categories of work quantity and work quality, and was rated "outstanding" in the categories of dependability, work relations, work methods, and personal conduct. However, when Mosby was evaluated on July 7, 2011, Mosby was rated "unacceptable" in every category except dependability, in which she was rated "satisfactory." The record does not appear to contain any evidence to explain this dramatic change in Mosby's evaluation. In addition, the USPS's proffered reasons for Mosby's termination (delivering a package one minute late and returning to the office late) arguably do not relate to some of the categories in which Mosby was rated "unacceptable" on her 60-day performance evaluation. In its reply, the USPS does not respond to Mosby's allegations that this evidence establishes a causal connection between her reporting and her termination.[8]

_____

[8]Mosby also argues in her opposition brief that other employees failed to deliver Express Mail packages on time and failed to return to the office on time but were not terminated. However, the court finds that Mosby has not presented sufficient evidence

Once a plaintiff has established a *prima facie* case of retaliation, the burden shifts to the defendant to advance a legitimate reason for the adverse employment action. The USPS argues that it had a legitimate reason to terminate Mosby based on her failure to deliver a package on time and her failure to return to the office on time. Based on a review of the record, the court submits that the USPS has produced sufficient evidence from which a reasonable juror could conclude that the USPS had a legitimate, non-retaliatory reason for terminating Mosby.

Lastly, the court submits that Mosby has sufficiently presented evidence from which a reasonable juror could conclude that the USPS's proffered reasons are actually pretext for unlawful retaliation. Evidence offered to establish causation may also serve to establish pretext. Cantrell v. Nissan N. Am. Inc., 145 F. App'x 99, 107-08 (6th Cir. 2005) (holding that "the same circumstances which established a causal connection between [the employee's] protected activity and her termination also serve as sufficient evidence" of pretext); Long v. Procter & Gamble Mfg. Co., No. 03-1097, 2005 WL 2491551, at *6 (W.D. Tenn. Oct. 6, 2005) (denying employer's motion for summary judgment and stating that "[t]he evidence showing the causal connection requirement and that the proffered reason for termination is

to support these claims, and therefore gives them no consideration.

pretextual may overlap."). Indeed, the Sixth Circuit has noted that the showing of a causal connection between protected activity and an adverse employment action, "if sufficiently strong, also necessarily rebuts a proffered legitimate, non-discriminatory reason for the adverse action." Cantrell, 145 F. App'x at 108 n.2. The court finds that the evidence discussed above relating to causation also supports Mosby's pretext argument. Considering that evidence, the court finds that a reasonable juror could find that Mosby was fired because she reported incidents of sexual harassment. See Singfield, 389 F.3d at 564 (stating that "caution should be exercised in granting summary judgment once a plaintiff has established a prima facie inference of retaliation"). Therefore, the court recommends that the USPS's motion be denied as to Mosby's retaliation claim relating to her sexual harassment complaint.

### III. RECOMMENDATION

For the above reasons, it is recommended that the USPS's motion for summary judgment be granted in part and denied in part.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

February 9, 2016
Date

**NOTICE**

WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.